JUDGE HARDIN
delivebed the eollctwtng dissenting opinion.
This somewhat unusual proceeding against the chancellor of the Louisville Chancery Court may be regarded as an episode to the action of that officer in ordering the removal of Thomas P. Smith from the office of commissioner of that court, and which, on the appeal of Smith, was reversed by this court; it deciding, in effect, that the chancellor had no jurisdiction or power to remove the commissioner, “but only a supervisory power over his conduct,” and remanding the cause with instructions to allow Smith “ to perform the duties and enjoy the privileges of the office without disturbance by Robert Cochran,” whom the chancellor had attempted to appoint as commissioner on the removal of Sinith.
After the decision of this court, the chancellor promptly set aside his order for the removal of Smith and the appointment of his successor, and, as now appears, has since recognized Smith’s right to discharge the duties and enjoy the privileges of the office, so far as the law governing the relative rights and duties of the court and its commissioner, as construed by him, made it his imperative duty to do so; but assuming nevertheless to have in certain cases a discretionary power to devolve on special commissioners of his own appointment privileges and duties which by particular orders, if not by mere reference to the master, might have been exercised by him. And on the 14th day of October, 1870, a motion being made in the suit of Jacob Doern’s adm’r against his heirs and creditors, involving the settlement of Doern’s estate, to refer the cause to the commissioner for a report of debts against the estate, the chancellor, refusing to refer the cause to the commissioner, but deciding that he had authority to refer it to a *557 special commissioner to be appointed by him in the order of reference, referred the cause to John L. Marshall, and appointed him commissioner for the purpose aforesaid; Thomas P. Smith objecting at the time, and claiming that by virtue of his office as the commissioner of the court he had the legal right to have the order of reference made to him, and disputing the right or power of the court to make the order appointing Marshall and referring the cause to him.
Smith, on his petition to this court complaining of said action of the chancellor as a refusal to obey the mandate of the court in the case of Smith v. Cochran, and upon notice to the chancellor, has instituted this proceeding by rule against him to show cause, if any he can, why he has not obeyed and shall not in future obey said mandate; and the chancellor having responded to the rule, basing his defense upon his asserted power to appoint commissioners in suits for the settlement of estates of deceased persons, as well as a general denial of the imputed violation of the mandate of this court, a trial of the case has resulted in a decision by a majority of this court adverse to the action of the chancellor, complained of by the rule.
After a careful consideration of the questions of law involved, ably discussed as they have been by the eminent counsel for Smith on the one side and by the chancellor in person on the other, I entertain views of those questions which I can not reconcile with the opinion of the majority of the court, and am • constrained by a sense of duty and of the importance of the case respectfully tp express the reasons which compel me to dissent from that opinion.
Waiving the question whether, if it be true that the chancellor erred in making the reference to Marshall instead of the commissioner of the court, the error was not one of judgment only, committed in the exercise of the discretion of the court in construing the law, which might have been corrected by *558 this court on appeal; but not importing a willful violation of its mandate or a refusal to obey it, I will proceed at once to consider the question of power to appoint another than the commissioner of the court in the case referred to; the solution of that question being of much importance, and apparently desired by both parties.
The Louisville Chancery Court was established by an act of the legislature, approved February 28, 1835 (3 Session Laws, 157), the 12th section of the act providing that “the chancellor shall have power and authority to appoint one or more masters in chancery, whose duty it shall be to state all accounts referred to such master, and to do and perform all such acts as may be required of him; and a master in chancery shall execute all deeds of conveyance under the decrees and orders of said court that are usually made by a commissioner; and the chancellor may authorize a master to make all necessary proof which may be required in stating an account, or any other matter to him referred, and may require him to report the same to court.”
As the express power thus declared'of appointing masters or commissioners in chancery for the convenience and assistance of courts of equity already existed, and had been long exercised by those courts, the statute may be said to modify or regulate the duty of the court respecting commissioners rather than confer a power which it would have had as an incident of its jurisdiction. And although the 14th section of the act provided for the settlement of the accounts of personal representatives in the Louisville Chancery Court, and such settlements may have been made by the commissioners, as suggested in the argument, until the jurisdiction of the county court for that purpose was restored, we must look to the general law of the state for any express requirement that courts of chancery should refer suits for the settlement of the estates of deceased persons to the commissioner of the court or, *559 in other words, “ a master commissioner.” (3 Statute Laws, 240.) It may also be observed that while the original act establishing the chancery court and other statutes relating to it essentially changed the general rules of practice in their application to that court, or excluded them from it, its jurisdiction before the adoption of the Code of Practice as well as since has been mainly governed by the general law of the state.
Section 775 of the Civil Code provides that “the-jurisdiction of the Louisville Chancery Court is not affected by this Code, except as provided in section -770. The proceedings in that court shall conform to the provisions of this Code respecting actions by equitable proceedings, subject to the modifications contained in this chapter, which are applicable to that court alone.” Neither are the provisions of that chapter, modifying the general enactments of the Code as applicable to the chancery court, nor is any subsequent enactment of which I am aware, repugnant to the general provisions of chapter 4, title X., of the Code, for regulating the settlement of estates of deceased persons. Therefore, so far as that chapter may operate to supersede or modify the previous general law of the state in relation to the appointment of commissioners in suits for the settlement of estates, it must be equally applicable to the Louisville Chancery Court and all other courts having the same general jurisdiction in such cases.
Section 467, embraced by said chapter, provides that “in all actions for the settlement of the estates of deceased persons the court shall make an order for the creditors of such decedents to appear before a commissioner to be appointed by the court, and prove their claims by a certain day to be named in the order.”
According to the plain import of this section of the Code, the conclusion is inevitable that the reference may be made to “a commissioner to be appointed by the court” at the time *560 of making the reference; and there is nothing in the section indicating an' intention that the master or commissioner of the court alone shall be the person so to be appointed. But it is said, in effect, that as section 804 of the Code provides that the commissioner of the Louisville Chancery Court “shall discharge the duties of the present masters of the court,” and under the general law of the state regulating the administration and settlement of estates it was the duty of the several courts of equity, including the Louisville Chancery Court, to refer causes prosecuted under that law to “ a master commissioner,” it is still the duty of the latter court to so refer such cases, although as to all other courts the general law imposing that duty be abrogated or changed by section 467 of the Code; and that a different construction would involve the nullification of the authority of the commissioner to take depositions, and many of the rules of practice governing the chancery court which are inconsistent with the general provisions of the Code regulating procedure in the courts of the state, in terms sufficiently broad to comprehend the Louisville Chancery Court.
This would be so, I have no doubt, if the language of the Code mentioned as continuing the former duties and rights of the chancellor and commissioner of the chancery court was such as to manifest a particular legislative intention to continue the former law in force, merely restricting its application to the Louisville Chancery Court, for that would constitute a virtual re-enactment of the old law as applicable to the chancery court, though in its general scope repealed or superseded by the repugnant provisions of the Code; for it is an established rule, with regard to conflicting or inconsistent enactments relating to or comprehending the same subject, that where a general intention is expressed, and also: a particular intention which to the extent of its application is incompatible with the general intention, the particular intention of the *561 legislature is to be considered in tbe nature of an exception. (Sedgwick on Statutory and Constitutional Law, 60.)
But I do not find in either of the sections of the Code defining the duties of the chancellor, or those of the commissioner, any provision expressing or indicating an exception to the general authority conferred by section 467 for appointing commissioners in cases prosecuted for the settlement of estates. Although the chapter of the Code concerning the Louisville Chancery Court, which in section 775 expressly declares that the proceedings of that court shall conform to the Code except as modified by that chapter, does modify and exclude the general provisions of the Code in many respects, it contains no expression even implying a purpose of excluding section 467 as a rule of practice governing the reference of cases to commissioners for the settlement of estates.
The Code of Practice is by section 766 expressly made to “ apply to and regulate the proceedings of all courts of this commonwealth, though not expressly enumerated.” By treating its particular provisions respecting the Louisville Chancery Court as exceptions merely, and giving effect to its general provisions so far as they do not appear to be excluded by those or other exceptions, the supposed difficulty of harmonizing repugnant or conflicting provisions will be removed, and proper effect given to the entire Code; and, regarding this rule of construction as correct, I am constrained to conclude that the chancellor had the power, under section 467 of the Code, to appoint Marshall a commissioner in the case of Doern’s adm’r v. Doern’s heirs and creditors.
In the argument of this case much importance has been attached to an usage of the court, long and, I think, properly acquiesced in, of preferring the master to act as commissioner to others, whether the court was peremptorily required by law to appoint him or not; but the power of courts of equity to appoint special commissioners to discharge particular duties in *562 a variety of cases has not been and I presume can not be controverted. However just and proper it may be to prefer one who has accepted the office of commissioner of a court, and who is often best qualified to execute its orders of reference, I deem it sufficient to say that I know of no law depriving the courts of all discretion in the selection and appointment of special commissioners; but, on the contrary, by the second section of the act approved March 5, 1867, “ to require master commissioners to take an oath and execute bond for the faithful performance of their duties,” it is expressly declared that “ the court may appoint a special commissioner in any case, who by virtue of his appointment shall act as receiver in said court.” (1 Session Acts, 1867, p. 64.) This provision, though constructively repealed by the act of March 17, 1870, so far as it may relate to the office of receiver of the Louisville Chancery Court, is not otherwise affected by that act; and if it applies to that court, it seems to me to be conclusive of the question under consideration, and it is certainly sufficiently comprehensive in its terms to embrace that court. But be this as it may, the provision of the statute is an affirmance by the legislature of a principle which in many cases must be essential to the jurisdiction of a court of equity.
I deem it scarcely necessary to refer to particular instances, in the various forms of equitable procedure, in which the courts are not only authorized but required to appoint one or more special commissioners to execute their orders; as to make assessments or valuations, audit accounts, allot dower, or partition lands. Indeed, the existence of such a power may be said to have been coeval with the establishment of courts of equity; and it is an attribute of their jurisdiction so important to the correct administration of justice, so often recognized by legislative enactment, and so long and uniformly acquiesced in, that its exercise ought not to be abridged or restricted except by imperative law.
*563 As I conceive that this has not been done by the law now in force for the government of the action of the Louisville Chancery Court in suits for the settlement of the estates of deceased persons, I am of the opinion that the chancellor did not transcend his authority in appointing Marshall a commissioner in the case of Doern’s adm’r v. Doern’s heirs, &c., and that the rule against him should be discharged.